# Attachment Two

No. 21-13963

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

──────────◆──────────

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

EUGENE JACKSON,
*Defendant-Appellant*.

──────────◆──────────

On Appeal from the United States District Court
for the Southern District of Florida
Case No. 1:19-cr-20546-KMW-1

## BRIEF *AMICI CURIAE* OF ALABAMA, FLORIDA, AND GEORGIA IN SUPPORT OF PANEL REHEARING OR REHEARING EN BANC

Steve Marshall
 *Attorney General*

Edmund G. LaCour Jr.
 *Solicitor General*

STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
edmund.lacour@alabamaag.gov

Case 8:21-cv-00539-SDM-TGW   Document 12-2   Filed 07/11/22   Page 3 of 20 PageID 126
USCA11 Case: 21-13963   Date Filed: 07/01/2022   Page: 2 of 19

*United States v. Jackson*, No. 21-13963

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Under Eleventh Circuit Rule 26.1, undersigned counsel certifies that the following is a complete list of persons and entities who have an interest in the outcome of this case:

1. Adler, Andrew L.
2. Brenner, Michael
3. Carr, Christopher M.
4. Caruso, Michael
5. Fajardo Orshan, Ariana
6. Gonzalez, Juan Antonio
7. Greenberg, Benjamin G.
8. Holt, Julie Erin
9. Irwin, Hillary
10. Jackson, Eugene
11. LaCour, Edmund G.
12. Laserna, Peter A.
13. Louis, Hon. Lauren Fleischer
14. Marshall, Steve
15. McAliley, Hon. Chris M.
16. Mollison, Kathleen Ellen

Case 8:21-cv-00539-SDM-TGW   Document 12-2   Filed 07/11/22   Page 4 of 20 PageID 127
USCA11 Case: 21-13963   Date Filed: 07/01/2022   Page: 3 of 19

*United States v. Jackson*, No. 21-13963

17. Moody, Ashley

18. Noto, Kenneth

19. Reding, Jason A.

20. Reid, Hon. Lisette M.

21. Rivero, Laura Thomas

22. Rubio, Lisa Tobin

23. Silverio, Dayron

24. Smachetti, Emily M.

25. State of Alabama

26. State of Florida

27. State of Georgia

28. Torres, Hon. Edwin G.

29. United States of America

30. Williams, Hon. Kathleen M.

31. Wu, Jason

32. Zloch, William T.

s/Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for State of Alabama*

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ..................C1

Table of Contents ................................................................................................... i

Table of Authorities ............................................................................................... ii

Interest of *Amici Curiae* .........................................................................................1

BACKGROUND .....................................................................................................2

SUMMARY OF ARGUMENT ................................................................................5

ARGUMENT ...........................................................................................................6

I.  The Controlled Substances Act Schedule That Determines Whether A Previous State Conviction Is A "Serious Drug Offense" Under ACCA Is The Schedule In Effect At The Time Of The Previous Conviction. ...........6

II. The Panel's Misreading Of ACCA Would Make Numerous State Drug Convictions "Disappear" For ACCA Purposes. .............................................10

CONCLUSION ......................................................................................................11

# TABLE OF AUTHORITIES

## Cases

*Gordon v. United States*,
   962 F.3d 1344 (11th Cir. 2020) ............................................................. 9, 11

*McNeill v. United States*,
   563 U.S. 816 (2011) .................................................................................. passim

*Nijhawan v. Holder*,
   557 U.S. 29 (2009) ...................................................................................... 6, 8

*Shular v. United States*,
   140 S. Ct. 779 (2020) ...................................................................................... 2

*Taylor v. United States*,
   495 U.S. 575 (1990) ....................................................................................... 9

*United States v. Rodriquez*,
   553 U.S. 377 (2008) ....................................................................................... 1

## Statutes

8 U.S.C. §1101(a)(43)(B) ..................................................................................... 9

18 U.S.C. §921(a)(20) ........................................................................................ 10

18 U.S.C. §922(g) ............................................................................................ 2, 6

18 U.S.C. §924(e)(1) .................................................................................. 2, 6, 7, 8

18 U.S.C. §924(e)(2)(A) .................................................................................. 2, 6, 8

18 U.S.C. §924(e)(2)(A)(i) ................................................................................... 6, 8

18 U.S.C. §924(e)(2)(A)(ii) .......................................................................... 3, 4, 6, 7

21 U.S.C. 801 et seq. ........................................................................................... 2

21 U.S.C. 802 ................................................................................................2, 4

21 U.S.C. 951 et seq. ...........................................................................................2

Ala. Code §20-2-20(c) ......................................................................................11

**Rules**

11th Cir. R. 35-5 .................................................................................................5

**Other Authorities**

U.S. Sentencing Comm'n, *Federal Armed Career Criminals: Prevalence, Patterns and Pathways* at 8 (Mar. 2021), tinyurl.com/ys5jn769 ......................................................................................1

Case 8:21-cv-00539-SDM-TGW   Document 12-2   Filed 07/11/22   Page 8 of 20 PageID 131
USCA11 Case: 21-13963   Date Filed: 07/01/2022   Page: 7 of 19

## INTEREST OF *AMICI CURIAE*

*Amici* are the States of Alabama, Florida, and Georgia. States have a vital interest in protecting their citizens from illicit drugs and violent crime. To that end, *amici* routinely partner with the federal government to investigate and prosecute dangerous criminals. The Armed Career Criminal Act (ACCA) is an important tool in those efforts.

ACCA ensures that criminals who illegally possess firearms face enhanced sentences if they have been previously convicted of at least three violent felonies or serious drug offenses under federal or state law. ACCA reflects the reasonable judgment that a recidivist's "subsequent offense is … more serious because it portends greater future danger and therefore warrants an increased sentence for purposes of deterrence and incapacitation." *United States v. Rodriquez*, 553 U.S. 377, 385 (2008). And that judgment is backed up by data. The U.S. Sentencing Commission recently reported that of all armed career criminals released between 2009 and 2011, 59 percent were rearrested within 8 years. U.S. Sentencing Comm'n, *Federal Armed Career Criminals: Prevalence, Patterns and Pathways* at 8 (Mar. 2021), tinyurl.com/ys5jn769.

Because the panel's decision misconstrues ACCA and threatens to render it inapplicable to many serious drug offenders in this Circuit, the States urge the Court to rehear this appeal either as a panel or en banc.

1

# BACKGROUND

1. ACCA was enacted to take dangerous career criminals off the street. Thus, when an offender has committed a federal gun crime under 18 U.S.C. §922(g), he faces an enhanced sentence if he has at least "three previous convictions by any court"—state or federal—"for a violent felony or a serious drug offense, or both." 18 U.S.C. §924(e)(1). The definition of "serious drug offense" reflects Congress' intent to ascribe similar consequences to similar conduct, whether the conviction was secured by federal or state authorities:

> the term "serious drug offense" means--
>
> **(i)** an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>
> **(ii)** an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

18 U.S.C. §924(e)(2)(A).

To determine whether a state offense qualifies under ACCA, courts apply a "categorical approach" by which courts consider only "the statutory definitions of the prior offenses," not "the particular facts underlying the prior convictions nor the label a State assigns to the crimes." *Shular v. United States*, 140 S. Ct. 779, 783 (2020) (cleaned up). If an element of a state drug trafficking conviction stretches

2

more broadly than the requirements of §924(e)(2)(A)(ii), that state law crime is not a "serious drug offense." Thus, as relevant here, if a state conviction for trafficking an illegal drug could have been secured even if the drug at issue was not "a controlled substance … as defined in section 102 of the Controlled Substances Act," §924(e)(2)(A)(ii), then the "previous conviction" is not for a "serious drug offense."

2. This case involves a repeat offender named Eugene Jackson. By the time Jackson was convicted in 2017 for illegally possessing a firearm, he had already been convicted of numerous felonies in Florida, including two "violent felonies" under ACCA. Op. 4-5.[1] This appeal concerns two of his prior drug convictions—a 1998 Florida conviction for the sale of cocaine and a 2004 Florida conviction for possession with intent to sell cocaine—specifically, whether those "previous convictions" were "serious drug offenses."

The Supreme Court has explained that "[t]he only way to answer this backward-looking question is to consult the law that applied at the time of that conviction." *McNeill v. United States*, 563 U.S. 816, 820 (2011). Thus, the panel here looked to Florida law *in 1998 and 2004* to confirm that Jackson's convictions involved manufacturing, distributing, or possessing with intent to manufacture or distribute an illegal drug and could have resulted in 10 years' imprisonment when he was convicted.

---

[1] "Op." cites are to the slip opinion pagination of the Court's June 10, 2022 opinion.

3

But to determine whether the offenses necessarily involved "a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))," §924(e)(2)(A)(ii), the panel took a different tack. In its view, this part of the definition of "serious drug offense" required the Court to look to what controlled substances were banned by the CSA *at the time Jackson committed his firearm offense in 2017*, not at the time of his "previous convictions." Op. 8-10.

That made all the difference here because of a change in the federal drug schedule in 2015. There is no question that in 1998 and 2004, Florida's definition of "cocaine" lined up with the federal schedule in effect at those times. But years later, it was discovered that a cocaine analogue called ioflupane ($^{123}$I) (hereinafter "ioflupane") "has value in potentially diagnosing Parkinson's Disease," so in 2015, the U.S. Attorney General removed ioflupane from the federal drug schedule, narrowing its scope. Op. 12-13. Accordingly, the panel held that because it is theoretically possible that Jackson was convicted for dealing ioflupane in 1998 and 2004, his drug convictions ceased to be "serious drug offenses" as of 2015 and his 2017 firearm conviction could not be enhanced under ACCA. Op. 17-18.

The panel's published opinion was released on June 10, 2022. On June 13, a judge of this Court withheld issuance of the mandate. On June 22, the United States moved for an extension of time to file a request for rehearing so the United States could "determine if further review is warranted to correct a 'precedent-setting error

of exceptional importance.'" *See* Mot. for Enlargement of Time at 2 (quoting 11th Cir. R. 35-3). The United States noted that "[t]he panel decision relied on due-process and fair-notice considerations and did not consider the text of the statute." *Id*.

## SUMMARY OF ARGUMENT

ACCA is designed to protect the public from dangerous repeat offenders who have "previous convictions" for "violent felon[ies]" and "serious drug offense[s]." Assessing whether a previous conviction was for a serious drug offense is a backward-looking inquiry. What is relevant is the severity of the offense when it was committed. But under the panel's approach, crimes that were indisputably "serious drug offenses" under state law when they were committed will "'disappear' entirely for ACCA purposes" merely because the federal government has removed a minor component of cocaine from the federal schedule of prohibited substances. *McNeill*, 563 U.S. at 822. This makes little sense, for "[a] defendant's history of criminal activity—and the culpability and dangerousness that such history demonstrates—does not cease to exist when" the federal government later delists a component of an illicit substance trafficked by drug dealers. *Id*. at 823. The panel's decision conflicts with the text and purpose of ACCA and will turn loose too soon some of the most prolific criminal offenders in this Circuit. The Court should rehear this appeal.

5

# ARGUMENT

**I. The Controlled Substances Act Schedule That Determines Whether A Previous State Conviction Is A "Serious Drug Offense" Under ACCA Is The Schedule In Effect At The Time Of The Previous Conviction.**

When an offender has committed a federal gun crime under 18 U.S.C. §922(g), he is subject to sentence enhancement if he has three or more "previous convictions … for a violent felony or a serious drug offense, or both." 18 U.S.C. §924(e)(1). A "serious drug offense" is defined in 18 U.S.C. §924(e)(2)(A). That offense must have made the defendant eligible for a maximum sentence of ten years or more. *Id.* And the offense, whether state or federal, must have involved a "controlled substance … as defined in" the CSA. §924(e)(2)(A)(ii); *see also* §924(e)(2)(A)(i) ("an offense under the" CSA).

As the Supreme Court has recognized, when assessing "whether a 'previous convictio[n]' was for a serious drug offense," "[t]he only way to answer this backward-looking question is to consult the law that applied at the time of that conviction." *McNeill*, 563 U.S. at 820. While the *McNeill* Court focused on the maximum-sentence provision of §924(e)(2)(A)(ii), where "Congress uses similar statutory language and similar statutory structure in two adjoining provisions, it normally intends similar interpretations." *Nijhawan v. Holder*, 557 U.S. 29, 39 (2009).

Instead of interpreting all components of the definition similarly, the panel ruled that the phrase "controlled substance … as defined in section 102 of the

Controlled Substances Act" requires looking not to the time of the previous conviction but to the time of the later gun crime—in this case, 2017. Op. 9-11. Then, the panel determined that because Jackson's 1998 and 2004 convictions could have been for distributing ioflupane and ioflupane was no longer on the CSA schedule as of 2015, Jackson's 1998 and 2004 convictions ceased to be "serious drug offenses" as of 2015. Op. 17-18. The panel declared that "*McNeill*'s reasoning, which relied on the language 'previous convictions,' has no application here." Op. 22.

Respectfully, that was error. The language of "previous convictions" applies to *all* of §924(e)(2)(A)(ii)'s definition of "serious drug offense." The reason for defining "serious drug offense" is to determine whether the defendant "has three previous convictions" for such offenses. §924(e)(1). And a drug trafficking conviction in 1998 that was serious in 1998 remains serious today, even if the same conduct in 2017 might have resulted in different consequences. "A defendant's history of criminal activity—and the culpability and dangerousness that such history demonstrates—does not cease to exist when a State reformulates its criminal statutes in a way that prevents precise translation of the old conviction into the new statutes." *McNeill*, 563 U.S. at 823. The same is true as to changes to the federal drug schedule.

The panel's decision creates other anomalies too. Under the panel's approach, had Jackson's 1998 and 2004 crimes been charged as federal drug crimes instead of state drug crimes, the convictions would presumably still be "serious drug offenses"

7

today. They would have remained "previous convictions" for "offense[s] under the Controlled Substances Act," 18 U.S.C. §924(e)(2)(A)(i), even after the federal drug schedule was amended in 2015. But because Florida secured the convictions for Jackson's offenses in 1998 and 2004, equally culpable conduct is treated as less "serious," despite §924(e)(1) applying to "previous convictions by any court."

The present-tense language in the statute does not demand that disjointed result. In *McNeill,* the Court held that "[h]aving repeatedly looked to the historical statute of conviction in the context of violent felonies, we see no reason to interpret 'serious drug offense[s]' in the adjacent section of the same statute any differently." *Id.* Given that adjoining statutory language should be interpreted similarly—and that the Supreme Court has already construed similar provisions in ACCA this way—the present tense language of any portion of §924(e) poses no obstacle to answering the backward-looking question concerning previous convictions. *Nijhawan*, 557 U.S. at 39. "Congress used the present tense to refer to past convictions." *McNeill*, 563 U.S. at 822.

The panel believed that its interpretation is mandated to provide fair notice under the Fifth Amendment's Due Process Clause, lest defendants not know that their "conduct that falls outside the statute's parameters brings potential criminal consequences" in the form of a harsher sentence. Op. 10. But that begs the question whether the previous-convictions inquiry is fully, or only partially, backward-

8

looking. As explained above, when determining whether a previous conviction was for a serious drug crime, one naturally looks to whether the federal government banned the drug in question at the time of conviction. Jackson thus had notice that he was an armed career criminal when he decided to illegally possess a firearm in 2017. *Cf. Taylor v. United States*, 495 U.S. 575, 596 (1990) ("[T]he rule of lenity … cannot dictate an implausible interpretation of a statute….").

Indeed, this Court saw no Due Process problem when interpreting a nearly identical statute in *Gordon v. United States*, 962 F.3d 1344 (11th Cir. 2020). That case involved a provision of immigration law that makes removable "noncitizen[s] convicted of … a 'drug trafficking crime,' which is defined as 'any felony punishable under the Controlled Substances Act.'" *Id.* at 1347 (quoting 8 U.S.C. §1101(a)(43)(B)). Gordon argued that his 2003 Georgia conviction for possession with intent to distribute ecstasy was not "punishable under the Controlled Substances Act" because the Court should "compare his conviction with the federal controlled substances schedules in effect at the time of his removal proceedings rather than those in effect at the time of his conviction." *Id.* at 1351 n.4. Gordon was "incorrect." *Id.* When "assessing whether a noncitizen's conviction qualifies as an aggravated felony, we compare his offense of conviction to the CSA schedules in effect when he was convicted." *Id.* The same reasoning should apply to ACCA.

Finally, the panel's ruling would conflict with how Congress expressly treats previous convictions elsewhere in ACCA. As the *McNeill* Court explained, "Congress based ACCA's sentencing enhancement on prior convictions and could not have expected courts to treat those convictions as if they had simply disappeared." 563 U.S. at 823. "To the contrary, Congress has expressly directed that a prior violent felony conviction remains a 'conviction' unless it has been 'expunged, or set aside or [the] person has been pardoned or has had civil rights restored.'" *Id.* (quoting 18 U.S.C. §921(a)(20)). Thus, the entire "previous convictions" inquiry should be "backward-looking." This approach gives effect to the plain meaning of ACCA and avoids the absurd result of disappearing convictions.

## II. The Panel's Misreading Of ACCA Would Make Numerous State Drug Convictions "Disappear" For ACCA Purposes.

The panel's decision threatens to make numerous drug convictions that were previously "serious" in every sense of the word no longer "serious drug offenses" not just in Florida, but in Alabama and Georgia as well. As the panel noted, Florida did not update its drug schedule to exempt ioflupane until 2017, Op. 16, which presumably means that many Florida cocaine trafficking convictions preceding that date ceased to be "serious" as of 2015.

Alabama convictions likewise face possible erasure. Alabama law provides that if there is a change in the federal drug schedule, the State Board of Health will either update the State's schedule to mirror the federal schedule or explain within

10

thirty days its objection to the federal approach and take comments before reaching a final decision. Ala. Code §20-2-20(c). One would think this would be enough to allow the State to maintain drug laws that are not categorically overbroad for ACCA purposes. But under the panel's approach, Alabama comes up short.

As for Georgia, this Court's *Gordon* decision suggests that while amendments to the federal drug schedule won't benefit noncitizen drug traffickers who face removal for past serious drug crimes, such changes could redound to the benefit of armed career criminals seeking to avoid an ACCA enhancement. *See* 962 F.3d at 1351 n.4.

In *McNeill*, the Supreme Court eschewed a reading of ACCA that could make "a prior conviction … 'disappear' entirely for ACCA purposes." *Id.* But that is precisely the outcome of the panel's decision: minor edits to the federal drug schedule would make previous convictions disappear. To avoid that absurd result and ensure that serious serial offenders receive the sentences Congress deemed necessary, the Court should rehear this appeal.

## CONCLUSION

The panel or en banc Court should rehear this appeal.

Respectfully submitted this 1st day of July, 2022.

| | |
|---|---|
| Ashley Moody<br>*Attorney General of Florida* | Steve Marshall<br>*Attorney General of Alabama* |
| Chris Carr<br>*Attorney General of Georgia* | /s/ Edmund G. LaCour Jr.<br>Edmund G. LaCour Jr.<br>*Solicitor General*<br><br>STATE OF ALABAMA<br>OFFICE OF THE ATTORNEY GENERAL<br>501 Washington Avenue<br>Montgomery, AL 36130<br>(334) 242-7300<br>Edmund.LaCour@AlabamaAG.gov |

### CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 1, 2022, I filed the foregoing motion electronically using the Court's CM/ECF system, which will serve all counsel of record.

s/Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for State of Alabama*

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I hereby certify that that this document complies with the type-volume limits of Fed. R. App. P. 29(b)(4) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,585 words.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman.

s/Edmund G. LaCour Jr.
Edmund G. LaCour Jr.
*Counsel for State of Alabama*
